# Exhibit A

Clerk of the Superior Court
*** Electronically Filed ***
C. Cuellar, Deputy
10/7/2020 3:36:09 PM
Filing ID 12082724

Michelle R. Matheson #019568
David P. Matheson #011918
**MATHESON & MATHESON, P.L.C.**
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com
dmatheson@mathesonlegal.com
**E-Service:** reception@mathesonlegal.com
*Attorneys for Plaintiff*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| MONICA CAMBRA, | Case No.:  **CV2020-012613** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| UNIVERSAL WEATHER AND AVIATION, INC., a foreign corporation. | (Tier 2) |
| Defendants. | (Demand for Jury Trial) |

Plaintiff Monica Cambra, for her Complaint, alleges as follows:

1. Plaintiff Monica Cambra ("Plaintiff") was at all relevant times to this action a resident of Maricopa County, Arizona.  Plaintiff is a former employee of Defendant Universal Weather and Aviation, Inc., ("Universal").

2. Defendant Universal is a foreign corporation doing business in the State of Arizona, with a business location within Maricopa County, Arizona.  The events giving rise to this action occurred, in part, in Maricopa County, Arizona.

3. Defendant Universal caused the events and actions complained of herein to occur in Maricopa County, Arizona.

4. This Court has jurisdiction and venue over the subject matter and the parties hereto pursuant to A.R.S. §§ 12-123 and 12-401.

1

5.    Plaintiff was employed by Defendant Universal for approximately 20 years with her employment ending on or about February 2020.

6.    On or about March 2020, World Fuel Services, Inc. ("World Fuel") acquired the assets and liabilities of Defendant Universal.

7.    On or about January 1, 2019, Defendant Universal established a Severance Benefits Plan ("Severance Plan").  A copy of the Plan is attached as Exhibit A.

8.    Under the terms of the Severance Plan, Plaintiff was entitled to certain severance benefits if she was terminated due to a reduction in force during the Plan year of 2019.

9.    Under the terms of the Severance Plan, Plaintiff was to receive:  1) two weeks of pay in lieu of advance notice of termination; 2) two weeks of pay per full year of continuous services as an employee of Defendant Universal, up to a maximum of twenty-six (26) weeks; 3) COBRA benefits paid for by the Defendant Universal for a maximum of two months following her termination date; and 4) outplacement assistance.

10.    On August 22, 2019, Plaintiff was notified that as part of the restructuring involved in World Fuel's acquisition of Defendant Universal, and the need to eliminate the financial impact of Plaintiff's position, Plaintiff was being terminated at the conclusion of the acquisition transition period on or about November 19, 2019.

11.    The acquisition transition period was subsequently extended by agreement to February 14, 2020, and Plaintiff was provided a Transition Agreement which set forth the details of "what you can expect to receive financially" at the conclusion of the transition period.  A copy of the Termination Notice and Transition Agreement with Amendment are attached as Exhibit B.

12.    Under the terms of the Transition Agreement, Plaintiff was determined to be eligible for compensation under the Severance Plan provided she remained actively employed during the transition and met or exceeded all expectations until the transition work was complete.

13.     Under the terms of the Transition Agreement, "Employee (Plaintiff) shall be paid pursuant the (sic) Company 2019 Severance Plan a severance in the gross amount of $31,692.57."

14.     On September 26, 2019, Plaintiff was offered, and accepted, a new position with World Fuel as Airport & FBO Solutions Sales Manager.  See Offer Letter attached as Exhibit C.

15.     Upon information and belief, because of delays in the consummation of World Fuel's acquisition of Defendant Universal, the termination of Plaintiff's employment with Defendant Universal and the start of her employment with World Fuel was delayed.

16.     On or about February 10, 2020, Plaintiff's employment by Defendant Universal ended when Plaintiff was reoffered, and again accepted, the Sales Manager position with World Fuel.

17.     Despite Plaintiff's demands for payment under the Severance Plan and Transition Agreement, Defendant Universal has wrongfully failed to pay sums due and owing to Plaintiff.

**COUNT ONE**
**(Breach of Contract)**

18.     Plaintiff incorporates by reference the allegations above.

19.     The Severance Plan and Transition Agreement are contracts between Defendant Universal and Plaintiff.

20.     The Severance Plan and Transition Agreement set forth the terms, conditions, and calculation method for determining payments and other obligations due and owing to Plaintiff.

21.     Plaintiff satisfied her obligations under the Severance Plan and Transition Agreement entitling her to certain payments and other benefits under the Severance Plan and Transition Agreement.

22.    Defendant Universal breached the terms and conditions of the Severance Plan and Transition Agreement when they failed and wrongfully refused to pay Plaintiff the payments and other benefits due and owing under the Severance Plan and Transition Agreement.

23.    Plaintiff is entitled to pre- and post-judgment interest on the payments and other benefits due and owing under the Severance Plan and Transition Agreement.

24.    Plaintiff is entitled to her attorneys' fees and costs pursuant to A.R.S. § 12-341.01.

## COUNT TWO
### (Violation of Arizona Wage Act)

25.    Plaintiff incorporates by reference the allegations above.

26.    At all times relevant to this action, Plaintiff was an "employee" and Defendant Universal was her "employer" as those terms are defined by the Arizona Wage Act.

27.    Plaintiff was an employee of Defendant Universal until approximately February 2020.

28.    Plaintiff's was not paid money under the Severance Plan or Transition Plan.

29.    Despite the requirements of A.R.S. § 23-353, Defendant Universal has wrongfully refused to pay Plaintiff the amount due her under the Severance Plan and Transition Agreement.

30.    The Arizona Wage Act, A.R.S. § 23-350, defines wages to include "nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation."

31.    The money owed Plaintiff under the Severance Plan and Transition Agreement is "wages" under the Arizona Wage Act.

32.    Defendant Universal violated A.R.S.  §23-353 by failing to pay Plaintiff all wages due.

4

33.   Plaintiff is entitled to treble damages under A.R.S. § 23-355.

34.   Plaintiff is entitled to recover his attorneys' fees and costs incurred herein pursuant to the Arizona Wage Act.

## COUNT TRHEE
### (Unjust Enrichment)

35.   Plaintiff incorporates by reference the allegations above.

36.   The Severance Plan and Transition Agreement were intended to provide Plaintiff with compensation and other benefits for her service to Defendant Universal.

37.   Plaintiff worked for Defendant Universal as an employee by providing services to Defendant and otherwise satisfying the terms and conditions of the Severance Plan and Transition Agreement, and Defendant received the benefit of Plaintiff's services.

38.   Defendant Universal profited by the services provided by Plaintiff; however, they have refused to fully compensate Plaintiff for her services under the terms and conditions of the Severance Plan and Transition Agreement and have therefore been unjustly enriched.

39.   Plaintiff is entitled to receive the payments and other benefits due under the Severance Plan and Transition Agreement for the valuable services provided to Defendant Universal.

## REQUESTED RELIEF

WHEREFORE, Plaintiff requests:

A.   For the Court to find that Defendant Universal breached its Contract with Plaintiff and award Plaintiff appropriate damages, and her costs and attorneys' fees pursuant to A.R.S. § 12-341.01;

B.   For the Court to find that the Defendant Universal violated the Arizona Wage Act and award Plaintiff appropriate damages, including treble damages resulting from Defendant Universal's wrongful withholding, diverting, and/or conversion of monies due to Plaintiff, pursuant to A.R.S. § 23-355;

C.    For the Court to find that Defendant Universal was unjustly enriched by Plaintiff's work and award appropriate damages;

D.    For an award of prejudgment and post-judgment interest;

E.    For an award of Plaintiff's costs of suit incurred herein; and

F.    For the Court to award such other monetary, injunctive, equitable and declaratory relief as the Court deems just and proper.

DATED this 7th day of October, 2020.

MATHESON & MATHESON, P.L.C.

By: _____
Michelle R. Matheson #019568
David P. Matheson #011918
*Attorneys for Plaintiff*

## UNIVERSAL WEATHER AND AVIATION, INC.'S
## SEVERANCE BENEFITS PLAN AND SUMMARY PLAN DESCRIPTION

**1.    INTRODUCTION**

Universal Weather and Aviation, Inc. ("Company") has established this Severance Benefits Plan and Summary Plan Description (the "Plan") to provide severance benefits to certain Eligible Employees whose employment is terminated as part of a Reduction in Force or Reorganization conducted during calendar year 2019 (the "Plan Year") involving the Company's operations located at 1150 Gemini Ave, Houston, Texas 77058 ("Affected Offices") as set forth herein.

Any benefits paid under the Plan are voluntary and are not required by any legal obligation other than the Plan itself.

**2.    ELIGIBILITY FOR BENEFITS**

Employees eligible to receive severance benefits under the Plan are those Employees at the Company's Affected Offices who are notified by the Company of their eligibility for Plan benefits during the Plan Year and who comply with certain administrative procedures established by the Company.  Specifically, to receive benefits under this Plan, an Employee at the Company's Affected Offices must: (1) be notified in writing of eligibility to participate in the Plan; (2) be involuntarily terminated without "Cause," as defined herein, as part of a Reduction in Force or Reorganization during the Plan Year; (3) have a Termination Date during the Plan Year; (4) not be entitled, pursuant to any other written agreement with the Company, to more than two weeks' advance notice of termination or to cash severance benefits that are greater than the severance benefits offered under this Plan; (5) return to the Company all Company property and materials and have satisfied and paid all travel and cash advances, debts and obligations to the Company prior to the Employee's Termination Date; (6) complete any required exit paperwork and/or exit interview prior to Employee's Termination Date; (7) continue to perform Employee's regular job duties and functions up to Employee's Termination Date; and (8) execute and return to the designated Company representative, in the time specified, a Severance Waiver and Release in favor of the Company and, if applicable, not revoke Employee's acceptance of the Severance Waiver and Release.

Failure to comply with any of the foregoing requirements will render Employee ineligible to receive severance benefits under the Plan.

In signing and, if applicable, not revoking the Severance Waiver and Release, Employee is giving up legal rights and claims against the Company arising out of Employee's employment and termination.  Before signing the Severance Waiver and Release, Employee should consult with an attorney.

**3.    DEFINITIONS**

For purposes of this Plan only, the following terms shall have the meaning described below:

"Employee" shall mean and include all regular employees (not temporary workers or contractors) of the Company and its successors or assigns who work at or report to the Company's Affected Offices.

**EXHIBIT
A**

"Eligible Employee" shall mean any Employee who satisfies the eligibility requirements set forth in paragraph 2, above.

"Reduction in Force" shall mean the Company's termination of one or more Employees' employment with the Company for the primary purpose of reducing or eliminating the financial effect of maintaining the Employee(s) in the position(s) held by the terminated Employee(s).

"Cause" shall have the same meaning as set forth in any Employment Agreement in effect between Company and an Employee eligible for benefits under this Plan, or, if no such agreement exists, shall mean conduct rendering an Employee ineligible for unemployment benefits.

"Reorganization" shall mean changes in the organizational and/or personnel structure of the Company, which may include the elimination, addition, redistribution or transfer of functions, positions, roles or duties within the Company including any such realignment of the aforementioned functions, positions, roles or duties.

"Severance Waiver and Release" shall mean a contractual document satisfactory to the Company in one of the general forms attached hereto (as applicable), which when executed and given effect releases the Company from and waives any and all legal claims the Employee might have or otherwise seek to assert against the Company and/or entities or individuals affiliated with the Company.

"Termination Date" shall mean the date designated by the Company on which an Eligible Employee's employment with the Company will terminate.

## 4.    SEVERANCE BENEFITS

Each Eligible Employee shall receive the following severance benefits under the Plan, subject to the terms of the Plan:

- Two weeks of pay in lieu of advance notice of termination of employment;
- Non-exempt Eligible Employees shall receive one and one-half (1½) weeks of pay per full year of continuous service as an employee of the Company, up to a maximum of twenty-six (26) weeks, but totaling no less than $2,500.00;
- Exempt Eligible Employees shall receive two (2) weeks of pay per full year of continuous service as an employee of the Company, up to a maximum of twenty-six (26) weeks, but totaling no less than $2,500.00;
- In the event an Eligible Employee elects to continue his or her medical and/or dental benefits pursuant to COBRA, the Company will pay the cost of COBRA continuation coverage (less applicable taxes) for up to a maximum of two (2) months following Employee's Termination Date; and
- Outplacement assistance for a fixed duration and provided by an entity or company determined by the Administrator.

The foregoing severance benefits shall be determined using the Employee's regular base rate of pay at the time employment terminates, based on the Employee's regular schedule.  Benefit

calculations will not include any overtime, bonuses, commissions, differentials or any other additional compensation. If the Employee works less than full-time, severance pay will be calculated based on the Employee's regular part-time schedule.

In addition to the foregoing non-discretionary severance benefits, some Eligible Employees may receive an additional discretionary bonus severance payment. The decision regarding which Eligible Employees, if any, receive this discretionary bonus severance payment and the amount, if any, of any such payment shall be made by each Eligible Employee's respective manager in his or her sole discretion at or near the time the Eligible Employee receives written notification of eligibility to participate in the Plan.

Except for two weeks of pay in lieu of advance notice of termination of employment, Severance benefits will be paid in one of the following two ways, at the Company's sole discretion: (i) in a lump sum paid within fourteen days after the Employee executes the Severance Waiver and Release, provided the Employee does not revoke the Severance Waiver and Release within the permissible revocation period provided for in the release, if applicable, or (ii) in multiple payments on regularly scheduled, bi-weekly payroll dates, commencing fourteen days after the Employee executes the Severance Waiver and Release, provided the Employee does not revoke the Severance Waiver and Release within the permissible revocation period provided for in the release, if applicable.

## 5.   WITHHOLDING TAXES ON BENEFITS

Notwithstanding any other provision of the Plan, all severance benefits shall be reduced by any applicable federal, state, city, and other taxes as may be required pursuant to any law or governmental regulation or ruling and all other normal employee deductions made with respect to the Company's employees generally.

## 6.   NO OTHER SIMILAR BENEFITS

Receipt of severance benefits under this Plan is in lieu of any other severance benefits offered by the Company under any other applicable practice or policy, with the exception of paid leave, pay in lieu of notice, or other payments the Company is obligated to make pursuant to an Employment Agreement in effect between the Eligible Employee and the Company.

## 7.   DEATH

In the event an Eligible Employee dies before Plan benefits are paid, such benefits shall be paid to the estate of the Eligible Employee in the same amount and at the same time that payment would have been made to the Eligible Employee.

## 8.   LIMITATION ON TRANSFERABILITY

Except as provided in Section 7 above, the interest of any Eligible Employee in the benefits described in this Plan may not be sold, assigned, transferred or otherwise disposed of in any way, and any attempted sale, assignment, transfer or other disposition shall be null and void. If an Eligible Employee sells, assigns, transfers or otherwise encumbers his or her rights or interest in

the Plan or Plan benefits, such act will be treated as an election by the Eligible Employee to forfeit his or her right to or eligibility for any benefits to which he or she may otherwise have been eligible to receive under the Plan.

## 9.    SOURCE OF BENEFITS

The benefits provided under the Plan shall be unfunded and payable solely from the general assets of the Company.

## 10.    EXPENSES

The expenses of operating and administering the Plan shall be borne entirely by the Company.

## 11.    PLAN SPONSOR AND ADMINISTRATOR

The Company shall be the "Plan Sponsor" and the "Administrator" of the Plan. The Administrator shall make any and all determinations required to be made in connection with the operation and administration of the Plan, including (without limitation) the determination of whether an Employee is an Eligible Employee and the amount of any benefit payable hereunder. The Administrator shall have the sole, final and exclusive discretion to interpret the provisions of the Plan as it may deem necessary or appropriate for the operation and administration of the Plan.

## 12.    NAMED FIDUCIARY

The Company is the "named fiduciary" of the Plan within the meaning of ERISA, including the "named fiduciary" with the power to act with respect to the review of claims for benefits under the Plan that are denied.

## 13.    ALLOCATION AND DELEGATION OF RESPONSIBILITIES

The Company may allocate among and/or delegate to any officers or employees of the Company any of its responsibilities for the operation and administration of the Plan, so long as such allocation and/or delegation is done in writing. Any written allocation or designation shall become effective when executed by an officer of the Company and the designated person or persons shall then be responsible for carrying out the responsibilities described in such writing.

## 14.    CLAIMS AND REVIEW PROCEDURES

Any Employee who believes that he or she has not received the proper benefits under the Plan ("Claimant") must file a written claim with the Administrator. The Administrator will review the claim and notify Claimant, as applicable, of the Plan's decision in writing within 90 days after the claim is received, unless the Administrator determines that special circumstances require an extension of time for processing the claim. If the Administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the Claimant prior to the end of the initial 90-day period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Plan expects to render the

benefit determination. Any extension shall not exceed a period of 90 days from the end of the initial period.

If the Administrator denies a claim, in whole or in part, the Administrator's notice will set forth:

a. The specific reason(s) for the denial;

b. The Plan provision(s) on which the denial is based;

c. A description of any material or information necessary for the Claimant to perfect the claim, and an explanation of why such material or information is necessary; and

d. Information concerning the steps to be taken if the Claimant wishes to submit the claim for further review.

If the Claimant feels the denial of the claim is improper, the Claimant, or the Claimant's duly authorized representative, must file a written request for a full review of the claim. A request for review must be filed with the Administrator within 60 days after the Claimant receives notice of the denial and should set forth all of the grounds upon which it is based, all facts in support of the request and any other matters the Claimant (or the Claimant's representative) deems pertinent. The Administrator will give the Claimant, or the Claimant's representative, upon request, the opportunity to review, free of charge, all relevant Plan documents in preparing a request for review. The review will take into account all comments and information presented to the Administrator including any new comments and information raised for the first time upon the review. The Administrator will furnish the Claimant with a final written decision within 60 days after receipt of the request for review, unless the Administrator determines that special circumstances require an extension of time for processing the claim. If the Administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the end of the initial 60-day period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Plan expects to render the determination on review. Any extension shall not exceed a period of 60 days from the end of the initial period. The Administrator's decision shall be final and binding.

Satisfaction by the claimant of the foregoing claim and review procedures is a mandatory prerequisite to the filing by claimant of any lawsuit with respect to the claim in state or federal court. To be timely, any such lawsuit must be filed within 12 months after the denial of the claim has become final under the plan.

## 15.   TERMINATION AND AMENDMENT

The Plan may be amended or terminated by the Company at any time when, in its judgment, such amendment or termination is necessary or desirable. No such termination or amendment shall affect the rights of any Employee who is entitled under the terms of the Plan to receive severance benefits at the time of such amendment or termination. The Plan can only be changed by written endorsement by a duly authorized officer of the Company and only when the Company attaches the endorsed written amendment to the Plan. No agent or employee other than a duly authorized officer of the Company has the authority to change or waive any provision of the Plan.

16.    NO VESTED RIGHT TO BENEFITS

Severance benefits are not intended to be a vested right. The Company reserves the right to interpret the Plan, prescribe, amend and rescind rules and regulations relating to it, determine the terms and provisions of the severance payments and make all other determinations it deems necessary or advisable for the administration of the Plan. The determination of the Company on all matters regarding the Plan shall be conclusive.

17.    GOVERNING LAW

This Plan shall be governed by Texas law, without regard to its choice of law provisions, to the extent not otherwise exclusively governed by the Employee Retirement Income Security Act (ERISA), which shall otherwise apply.

18.    QUESTIONS REGARDING THE PLAN

An Employee having questions regarding the Plan or its application should direct them to Veronica Delgado, Vice President, Human Resources and Workforce Development.

**TO EVIDENCE THE ADOPTION OF THIS SEVERANCE BENEFITS PLAN AND SUMMARY PLAN DESCRIPTION, THIS DOCUMENT HAS BEEN EXECUTED BY AN AUTHORIZED OFFICER OF THE COMPANY.**

Effective Date: January 1, 2019                    By: _____

                                                   Name: Ralph J. Vasami
                                                   Title: Chief Executive Officer

### Your Rights Under ERISA

As a participant in the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act (ERISA). Under ERISA, all participants are entitled to:

#### Receive Information About Your Plan Benefits

1. Examine, without charge, at the office of the Administrator of the Plan and at other specified locations, all documents governing the Plan and copies of any documents filed by the Plan with the U.S. Department of Labor, such as the latest detailed annual reports and Plan description, if any;

2. Obtain, upon written request to the Administrator, copies of documents governing the Plan and copies of the latest annual report upon written request to the Administrator. The Administrator may make a reasonable charge for the copies; and

3. Receive a summary of the Plan's annual financial report, if one is required to be filed. The Administrator is required by law to furnish each participant with a copy of this summary annual report, if applicable.

#### Prudent Actions By Plan Fiduciaries

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and the other Plan participants and their beneficiaries. No one, including your employer or any other person, may fire you or discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

#### Enforce Your Rights

If your claim for benefits is denied, in whole or in part, you have a right to know why this was done, to obtain copies of the decision without charge, and to appeal any denial, all within certain time schedules. (See "Claims and Review Procedures" in the Plan.)

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within thirty (30) days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. In addition, if you disagree with the Plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in federal court.

If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights under ERISA, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees.

If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

Assistance With Your Questions

If you have any questions about your Plan you should contact the Plan Administrator. If you have questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

ERISA INFORMATION

**Plan Name**

Universal Weather and Aviation Severance Benefits Plan

**Plan No.**

503

**Plan Sponsor**

Universal Weather & Aviation, Inc.
1150 Gemini Ave
Houston, Texas 77058

Telephone: 713-944-1622

**Plan Administrator**

Same as Plan Sponsor

**Employer Identification Number**

Tax I.D. #: 751039736

**Agent for Service of Legal Process**

Service of legal process may be made upon the Plan Administrator at the address shown above.

**Plan Year**

January 1, 2019 through December 31, 2019.

**Type of Plan**

Welfare Plan - Severance Plan

**Funding Medium**

General assets of the Plan Sponsor

**Trustee:**

None

**Type of Plan Administration:**

Internal by the Plan Administrator

**ATTACHMENTS**

Form of Severance Waiver and Release (for Employees under 40 years of age)
Form of Severance Waiver and Release (for Employees 40 years of age and older)


**UNIVERSAL**
Weather & Aviation, Inc.

August 22, 2019

Monica Cambra
1715 E Harwell Rd
Phoenix, AZ 85042

Dear Monica:

This letter is to document what we have discussed today and the impact it has on your position. As a result of the recent transaction regarding our UVair group, Universal must become a smaller organization in order to succeed in our continuing operating business lines. Unfortunately, the necessary corporate restructuring will directly impact your position.

This letter confirms that you are being laid off from your employment with Universal Weather and Aviation, Inc. (Universal). Your last day may occur earlier or later than Tuesday, November 19, 2019 depending on the needs required during the transition.

Included with this letter is a Transition Agreement that details what will be expected from you during the transition and what you can expect to receive financially from Universal when it concludes. Please sign and return the Transition Agreement by Monday, August 26, 2019 to document you understand and agree with the terms.

Pursuant to Universal's 2019 Severance Benefits Plan, you are eligible to receive severance benefits (severance plan attached). A blank copy of the Severance Waiver and Release is also attached for your reference. A 2-week notice period will be provided prior to the actual separation date. You will be provided an executed copy and further details regarding the Severance Waiver and Release during that 2-week notice period.

Universal values all of its people and undertakes this restructuring exercise with deep sadness. You are very much appreciated and we sincerely hope that you will agree to remain with us during this difficult transition.

Sincerely,

David L. Diulus
EVP and President UVair

**EXHIBIT**

**B**

## Transition Agreement For Monica Cambra

THIS TRANSITION AGREEMENT (this **"Agreement"**), is by and between Universal Weather and Aviation Inc. (the **"Company"**) and Monica Cambra (**"Employee"**).

Employee is directly impacted by the purchase of UVAIR, a division of the Company by World Fuels Services Inc. and is eligible for the following Company 2019 Severance Plan if Employee remains actively employed during the transition and meets or exceeds all expectations until the transition of work is completed.

1. **Transition Period.** The transition will begin 8/22/2019 with an anticipated end date of on or before 11/19/2019 as set forth herein ("Transition Period").

2. **Separation Date.** The Separation Date is the date Employee's services are no longer required and will be Employee's last day of employment, as set forth herein ("Separation Date"). The Separation Date may occur earlier-or later than 11/19/2019, depending on the needs required during the transition and Employee will remain eligible for Company 2019 Severance Plan if all terms of this Agreement are met.

3. **Notice Period.** A 2-week Notice Period will be provided prior to the Separation Date. Employee will be required to perform all duties and responsibilities during the Notice Period and complete the final transition or the Company in its sole discretion may offer to pay your salary in lieu of the 2 weeks' notice.

4. **Other Duties as Assigned.** In the event Employee's current duties transition prior to the close, Company has full authority to assign other duties, until all functions have been transitioned and the transition is complete.

5. **Company 2019 Severance Plan.** Employee will be eligible for Company 2019 Severance Plan as set forth below:

    a. **Eligibility Requirements**

        i. Employee is actively employed during the Transition Period and on the Separation Date.

        ii. Employee performs all duties and responsibilities, meeting or exceeding expectations.

        iii. Employee executes a binding Severance Waiver and Release, which includes a full and complete release by you of all possible legal claims against Universal.

        iv. Employee does not revoke your execution of the Severance Waiver and Release.

a. **Ineligibility Terms**

    i.     Employee will not be eligible for the Company 2019 Severance Plan or any proration, in the event of an Employee's voluntary resignation prior to the Separation Date.

    ii.     Employee will not be eligible for Company 2019 Severance Plan or any proration, if Employee fails to perform all duties and responsibilities, meeting or exceeding expectations.

    iii.     Employee will not be eligible for the Company 2019 Severance Plan or any proration, if Employee fails to sign the Severance Waiver and Release or signs then revokes Severance Waiver and Release.

    iv.     Employee will not be eligible for the Company 2019 Severance Plan, or any proration, if Employee is offered and accepts other employment within the Company.

b. **Company 2019 Severance Plan.** Employee shall be paid pursuant the Company 2019 Severance Plan a severance in the gross amount of $31,692.57 (**"Severance Payment(s)"**).

c. **Appreciation Bonus.** Employee shall be paid pursuant the Appreciation Bonus Plan a bonus in the amount of $5,700.00 representing continuous employment with the Company for 10 years or more.

d. **Subsidized COBRA** If Employee elects COBRA for medical, dental and/or vision insurance, the Company will subsidize COBRA for a period of **two (2)** months, meaning the Company will continue to pay the Employer premium and the Employee will continue to pay the Employee deduction for this period.

e. **Company and Severance.** The Company shall pay the severance amount to the Employee in a lump sum within fourteen (14) days following Employee's execution of the Severance Agreement if Employee does not revoke the Agreement.

6.     **Exclusivity.** During the Transition Period, Employee agrees to devote Employee's best efforts and full working time to the employment by the Company hereunder and shall not directly or indirectly, either as an employee, employer, consultant, contractor, agent, or in any other individual or representative capacity, engage in or participate in or render any service to any business other than the business of the Company without the express written permission of the Company.

7.   **Termination.** In addition to any other termination provisions in this Agreement, this Agreement shall automatically terminate upon Employee's death, and may be terminated in accordance with the following:

    (a)   This Agreement may be terminated by mutual agreement of the parties;

    (b)   This Agreement may be terminated by the Company if Employee fails to perform his/her duties and responsibilities and failing to meet or exceed expectations.

8.   **Intellectual Property Rights.** All copyright, trademark and/or other intellectual property rights of any kind created, conceived, developed or reduced to practice by Employee, alone or in cooperation with other Company employees, during the Term and relating to or useful in the Company's business or to Employee's duties, (**"Works"**) shall be deemed a "work for hire" and shall be and remain the sole and exclusive property of the Company, and Employee shall, to the extent deemed necessary or desirable by the Company, cooperate and assist the Company in perfecting, filing and recording any such rights, including without limitation executing inventors' declarations and assignment forms. To the extent that any Works are not deemed "work for hire" Employee shall assign and hereby does assign all of the Employee's rights in such Works to the Company and waives any and all moral rights the Employee may have in such Works. Employee's obligations under this Section shall survive the expiration or termination of this Agreement.

9.   **Confidentiality.** During Employee's employment with the Company, Employee will receive information and training which are proprietary to the Company, including without limitation customer lists, pricing, programming techniques, financial information, sales strategies and methods and promotional programs and techniques. Employee agrees that all such information is the sole and exclusive property of the Company, and that Employee will safeguard all such information and maintain it as secret and confidential. Employee further agrees not to disclose such information to any third party. Employee's obligations under this Section shall survive the expiration or termination of this Agreement.

10.   **Non-Waiver.** The waiver by either party of any term or condition of this Agreement or of the breach thereof shall not be deemed to constitute the waiver of any other term or condition of this Agreement or of any subsequent breach of any term or condition hereof.

11.   **Assignment.** Employee may not assign any of Employee's rights or obligations hereunder without the express prior written permission of the Company. The Company may assign its rights and obligations hereunder to any individual or entity. Upon agreement in writing by such successor to be bound by the terms hereof, Company shall be relieved from all further liability or obligation hereunder.

12.   **Company's Obligation.** Nothing herein shall be construed to require Company to utilize Employee's services hereunder and Company's obligation shall be deemed fully satisfied by payment of the compensation and other benefits provided herein during the term hereof.

3

13. **Choice of Law.** The parties hereto agree to be and intend to be legally bound by the terms of this Agreement. Employee and the Company agree that terms of this Agreement shall be binding and shall be interpreted under and governed by laws of the State of Texas, without regard to the conflicts of law provisions thereof.

14. **Severability.** If any clause or provision of this Agreement is illegal, invalid, or unenforceable under present or future laws, then the remainder of this Agreement shall not be affected thereby and in lieu of such clause or provision, there shall be added as a part of this Agreement a clause or provision as similar in terms to such illegal, invalid, or unenforceable clause or provision as may be possible and be legal, valid, and enforceable.

15. **Miscellaneous.** This Agreement constitutes the entire agreement and understanding between Employee and the Company concerning the compensation to be paid to Employee and all of the terms and conditions of Employee's employment by Company. This Agreement supersedes any prior understandings, representations or agreements, whether oral or written, concerning the subject matter hereof. This Agreement may not be modified or amended except by a written instrument duly executed by the party against whom such modification or amendment is sought to be enforced.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

UNIVERSAL WEATHER AND AVIATION, INC

By: _____

Name: David L. Diulus

Title:   EVP and President UVair

EMPLOYEE

By: _____

Name: Monica Cambra

Date:   8/23/19

4


**UNIVERSAL**
Weather & Aviation, Inc.

## Amendment

## Transition Agreement For Monica Cambra

This Amendment, dated 11/11/2019, is to amend certain terms and conditions of the Transition Agreement for **Monica Cambra** (the "Employee") issued on 8/22/2019 (the "Original") and attached hereto by extending the **Separation Date** and increasing the amount payable under the **Company 2019 Severance Plan** that were previously recorded.

|                   | Original   | Amended to |
|-------------------|------------|------------|
| Separation Date   | 11/19/2019 | 2/14/2020  |
| Severance Amount  | 31,692.57  | 31,692.57  |

This Amendment also serves to confirm that the$ 31,692.57 USD shall remain payable and effective should the **Company 2020 Severance Plan** come into effect before the actual Separation Date of the Employee.

Except as provided in this Amendment, the terms and conditions of the Agreement remain in full force and effect as set forth therein.

Understood and Agreed:

Monica Cambra

11/15/19

Date

David L. Diulus
EVP and President UVair

Date

Monica Cambra



WORLD FUEL SERVICES, INC.
9800 NW 41st Street, Miami, FL 33178
tel 305.428.8000   fax 305.392.5608
www.wfscorp.com

September 26, 2019

*Revised delivery via email*

Monica Cambra
monicacambra@gmail.com

Dear Monica,

Welcome to World Fuel Services. It is my pleasure to confirm our offer of employment for the position of Airport & FBO Solution Sales Manager with World Fuel Services, Inc. (the "Company") with the following terms and subject to the conditions set forth below:

- **Start Date** – Your start date is subject to the closing of the acquisition of Universal Weather and Aviation Inc.'s aviation fuel business by the Company (the "Closing"). Thus, your start date would be the next calendar day immediately following the Closing date.

- **Location** – Home Office in Phoenix, AZ

- **Report to** – Teresa Caric, Sr Manager, Airport & FBO Solution Sales or such other person as designated by the Company

**Compensation:** The Company will provide you:

- **Salary** – Your annualized rate of pay will be $63,385.14. Your salary will be payable in equal installments according to the Company's regular payroll practices and subject to such deductions as may be required by law.

- **Bonus** – You will be eligible to receive an annual bonus in an amount determined by the Company in its sole discretion. Your target bonus will be 15% of your annual salary, but the Company may award a lower or higher bonus in its discretion based on the Company's performance and upon review of your overall performance and achievement of the established management by objective goals. Your bonus is conditional upon your being employed by the Company on the date bonuses are paid. First year bonus payouts are prorated as per your employment commencement date.

**Benefits:**

- **Employee Benefits** – As a full-time employee, you will be eligible to participate in all benefits offered by the Company such as medical, dental and vision insurance. Company paid life insurance and short-term disability is also provided. The company also provides voluntary long-term disability, flexible spending accounts and additional supplemental plan options. Benefits eligibility begins the first day of your employment.

- **401(k) Plan** – You will be eligible to participate in the Company's 401k plan subject to an eligibility period of first of the month following thirty (30) days of service.

Page 1 of 2

**EXHIBIT
C**



WORLD FUEL SERVICES, INC.
9800 NW 41st Street, Miami, FL 33178
tel 305.428.8000  fax 305.392.5608
www.wfscorp.com

- **Paid Time Off (PTO)** – You will receive 20 days of paid time off (PTO) annually, which may be used subject to the Company's PTO Policy.  PTO hours are prorated based upon your date of hire and frontloaded for immediate use.  PTO does not carryover and unused PTO is forfeited at the end of the year.

The Immigration Reform Control Act of 1986 requires that each employer establish the employment authorization and identity of each individual hired since 1986.  In order to comply with this law, we must complete this process on the first day you report to work.  It is necessary that you bring with you, any appropriate documentation.  We will verify your original documents and promptly return to you.

*Again, please note that this offer of employment is contingent upon the Closing of the transaction with Universal Weather and Aviation, Inc.*  In addition, this offer is contingent upon your successful clearance of a background check, and your execution of the Company's Confidentiality and Non-Competition Agreement and Code of Conduct.  These documents and others are required and must be signed and received by the Company before the expiration of the offer of employment.

The first ninety (90) days of your employment is considered a probationary period.  Your performance during this probationary period will be evaluated to ensure that you are meeting initial performance expectations.  Advancement to full time regular employment status is contingent upon successful completion of the probationary period.

Please note that this letter is not a guarantee of employment or continued employment with World Fuel Services, Inc. or its affiliates.  Your employment with the Company will be at-will meaning that either you or the Company may terminate the employment relationship at any time and for any reason.

This offer of employment will expire if a response is not received by September 26, 2019.

You will receive more information from our Human Resources Department for your first day of employment.

Your signature represents your understanding of, and agreement with, the above terms.  Should you have any questions prior to your start date, please call your World Fuel Services HR Partners, Maria Palacio at (305) 351-4695 or Margie Toledo at (305) 351-4893.

Sincerely,


Margie Toledo
Director, Human Resources


ACCEPTED AND AGREED:

_____  9/26/19
Monica Cambra              Date


Page 2 of 2